*Law Offices of*
**CHARLES N. KENDALL, JR., P.L.L.C.**
*Attorney at Law*
P.O. Box 1756
Bisbee, Arizona 85603
Tel: (520) 452-9022
Charles N. Kendall, Jr., Esq.
State Bar No. 15133
ckendallesq@gmail.com
**Attorney for Debtor**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re: | Chapter 11 |
|---|---|
| SI SE PUEDE ENTERPRISES, LLC, | No. 4:24-bk-07108-SHG |
| Debtor. | **EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL** |

SI SE PUEDE ENTERPRISES, LLC, the debtor and debtor-in-possession (the "Debtor"), by and through its attorneys, files this motion requesting the Court to enter an order pursuant to 11 U.S.C. § 363 and Rule 4001 and 9014 of the Federal Rules of Bankruptcy Procedure authorizing the use of Cash Collateral (as hereinafter defined) on an interim and final basis. A proposed budget is attached hereto as **Exhibit "A"** (the "Budget").

This Motion is supported by the attached Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    JURISDICTION AND VENUE**

1.    On August 27, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing the above-captioned case.

2. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 & 1344.

3. This matter constitutes a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) & (M).

4. Venue of this proceeding and the Motion is proper in the District of Arizona pursuant to 28 U.S.C. §§1408 & 1409.

## II. BANKRUPTCY FACTUAL BACKGROUND

5. The Debtor owns and operates Anita's Street Market located at 849 N. Anita Avenue Tucson, Arizona 85705 (the "Property"). Anita's Street Market is a family-owned business that opened in 1984 and specializes in handmade flour tortillas, burritos, and tamales.

6. In 2022, Debtor learned there were substantial taxes owed and the IRS was threatening to put a lien on the Property. The Debtor, through its principal, Grace Soto, obtained a loan from private lenders to satisfy the tax obligations while investing the rest of the proceeds to update the kitchen machinery to better equip it to keep up production to serve its corporate customers (despite the large consumer clientele, Debtor's main source of revenue comes through contracts with various local Mexican restaurants).

7. In early 2023,, the City of Tucson Fire Department ordered the Debtor to make substantial repairs to the restaurant's commercial ovens for compliance reasons, which caused the Debtor to stop operating for a short period of time. The cessation of operations caused the Debtor to fall behind on the mortgage payments owed to the private lenders.

8. The disruption in operations also had a domino effect which caused Debtor to fall severely behind on her utility payments. Because the Debtor utilizes heavy equipment and machinery to produce a high volume of tortillas, Debtor's utilities average approximately $6,000 per month.

9. On January 17, 2024, the Property was set to be foreclosed.

10. Faced with foreclosure, the Debtor's principal, Grace Soto, filed a subchapter V bankruptcy under case number 4:24-bk-00334-SHG, which was later converted to Chapter 13.

11. It was too difficult for Ms. Soto to reorganize her personal affairs and the business affairs, so she felt it necessary to transfer title to the Property to the Debtor to focus solely on reorganizing the business debts.

12. Upon information and belief, the private lenders, Louis A. Banks and Eddice Cornelius (collectively the "Lenders"), may claim that the revenue generated by the Property is "cash collateral" as defined in 11 U.S.C. §363.

13. It is critical for the Debtor to resume operations so as to preserve the value of the business. Specifically, the Debtor needs to use the revenue generated from the rents ("Cash Collateral") to satisfy the obligations owed to the Lenders and to the business' vendors.

14. The Debtor proposes to reopen the business and use income generated by the Restaurant in accordance with the Budget with a twenty percent (10%) variance.

15. The Debtor proposes to work with Lenders to determine their status and whether an adequate protection payment to them is warranted.

### III. POINTS AND AUTHORITIES

Section 363(c)(2) of the Bankruptcy Code permits the use of Cash Collateral only upon consent of the party claiming an interest in Cash Collateral or with court authority after a notice and a hearing. Section 363(e) conditions the use of Cash Collateral on the debtor providing adequate protection of the interest at stake.

Section 361 of the Bankruptcy Code provides that where adequate protection is required to be furnished, it must protect a secure entity against any use of collateral that results in a decrease in the value of such entity's interest in such collateral. *See United*

*Savs. Ass'n Timbers of In-wood Forest Ass'n Ltd.*, 44 U.S. 365,369-73, 108 S. Ct. 626 (1988) (The "interest in property" entitled to protection is "the value of the collateral" that secures such claim); *In re Kain*, 96 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *General Elec. Mortgage Com. v. South Village. Inc. (In re South Village)*, 25 B.R. 987,989-90 (Bankr. D. Utah 1982).

Debtor's proposed use of cash is for the maintenance and upkeep of the Property all while satisfying the monthly obligations to the Lenders. The Lenders will be adequately protected by the Debtor's continuation and preservation of the going concern value of the Property where her business operates. *See, e.g., In re Erie Hilton Joint Venture*, 125 B.R. 140,149 (Bankr. W.D. Pa. 1991) ("Preservation of the going-concern value of the business can constitute a benefit to the secured creditor."); *In re Princeton Square Assocs.*, 201 B.R. 90-96 (Bankr. S.D.N.Y. 1996) ("[T]his court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents.").

The Central District of California Bankruptcy Court held that:

> Even if there was no equity cushion, I am not convinced that gross rents will diminish over the foreseeable future and this is the risk requiring protection ... debtor has committed to use the cash collateral to pay operating expenses and improve and maintain the property with any excess income going to First Texas. By dedicating cash collateral for these purposes, Debtor has substantially eliminated the risk of diminution of First Texas' interest in cash collateral. The more likely scenario is that cash collateral will increase.

*In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988).

Here, the Debtor's proposed use of the income to maintain the Property by paying Lenders, taxing authorities, city services and vendors, as well as paying for regular maintenance and repairs on the Property, protects the Lenders' interests and reduces the possibility that the Property will decrease in value.

Finally, the Debtor is in the best position to continue to maintain and retain the Property. By allowing the Debtor to use Cash Collateral to maintain and increase the Property's value, the Lenders will have a greater assurance of recovering their claims. Moreover, immediate interim approval of the use of Cash Collateral under Bankruptcy Rule 4001 (a) is appropriate. *See In re Center Wholesale Inc*., 759 F.2d. 1440, l44g fn. 2 (9th Cir. 1985).

In conclusion, because the Debtor will be using Cash Collateral to maintain the Property, including paying Lenders, taxing authorities, city services and vendors, and maintenance and repairs to the property, and because the Debtor is in the best position to continue to maintain and retain the Property, the use of Cash Collateral should be granted.

WHEREFORE, the Debtor respectfully requests:

1. Entry of an order authorizing the use of Cash Collateral in accordance with the Budget attached hereto as Exhibit A with a reasonable variation depending on the actual expenses as they arise for the interim period.

2. Granting such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 27th day of August, 2024.

> *Law Offices of*
>   CHARLES N. KENDALL, JR., P.L.L.C.
>
>
> By: /s/ Charles N. Kendall, Jr.
>   CHARLES N. KENDALL, JR.
>   Attorney for the Debtor

ORIGINAL of the foregoing electronically
filed this 27th day of August, 2024, with:

CLERK, UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA
*https://ecf.azb.uscourts.gov*

| 1 | Copies of the foregoing mailed/electronically delivered this 27th day of August, 2024, to: |
|---|---|
| 2 | |
| 3 | |
| 4 | OFFICE OF THE U.S. TRUSTEE<br>230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003-1706<br>USTPRegion14.PX.ECF@USDOJ.GOV |
| 5 | |
| 6 | |

**EXHIBIT A**

Monthly Budget

INCOME

| | |
|---|---|
| Consumer sales: | $10,000 |
| Corporate sales: | $15,000 |
| TOTAL INCOME: | $25,000 |

OPERATING EXPENSES

| | |
|---|---|
| Mortgage Payment: | $4,000 |
| Utilities: | $6,000 |
| (TEP/water/gas) | |
| Insurance: | $200 |
| Licenses: | $50 |
| Property taxes: | $75 |
| Bookkeeping Fees: | $250 |
| Professional Fees: | $1,000 |
| Food/vendors: | $5,000 |
| Office Expenses: | $200 |
| (packaging, ink etc.) | |
| Internet/Phone: | $300 |
| Employee wages: | $5,000 |
| Manager Salary: | $2,500 |

TOTAL OPERATING EXPENSES: $24,575

BALANCE AFTER OPERATING EXPENSE: $425